IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

THIAKIA TIDWELL,

    Plaintiff,

v.                                          No. 1:24-cv-01118-SHM-tmp

TENNESSEE DEPARTMENT OF
CORRECTION, CORECIVIC, HARDEMAN
COUNTY CORRECTIONAL FACILITIES
CORPORATION, and JERRY WARDLOW,

    Defendants.

---

ORDER GRANTING MOTION TO DISMISS

---

Plaintiff Thiakia Tidwell brings this action under 42 U.S.C. § 1983 and Tennessee law, asserting civil rights violations and wrongful death claims arising from the death of her son, Roddarous Marcus Bond ("Bond"). (ECF Nos. 1, 32). Before the Court is Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("the Motion"), filed on February 4, 2025. (ECF No. 33). For the reasons set forth below, the Motion is **GRANTED**.

I.    BACKGROUND

    A.    Factual Background

The following facts are taken from Plaintiff's original and amended complaints. (ECF Nos. 1, 32). For purposes of deciding

the Motion, the Court accepts all well-pleaded factual allegations
as true and views them in the light most favorable to Plaintiff.
See Mertik v. Blalock, 983 F.2d 1535, 1356 (6th Cir. 1993); see
also Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).

Plaintiff was the mother of Roddarous Marcus Bond, an inmate
who died while incarcerated at the Hardeman County Correctional
Facility ("HCCF") in Whiteville, Tennessee.  (ECF No. 32, ¶¶ 1-
3).  HCCF is owned by Hardeman County Correctional Facilities
Corporation ("HCCFC") and operated by CoreCivic, a private prison
management company, under a contract with the Tennessee Department
of Correction ("TDOC").  (Id. at ¶¶ 2-3).  Defendant Jerry Wardlow
was the warden at HCCF when Bond was incarcerated there.  (Id. at
¶ 5).

Throughout his incarceration, Bond allegedly told Plaintiff
about the "poor living conditions and dangerous environment within
the facility."  (Id. at ¶ 7).  Bond described "broken cell doors,"
"poor sanitation," and "lack of access to basic necessities."  (Id.
at ¶ 8).  There were "frequent lockdowns" during which "proper
procedures were not followed," and "administrative roadblocks"
that prevented his participation in rehabilitation programs.  (Id.
at ¶¶ 11, 16).  The facility was also "chronic[ally]
understaff[ed]," leading to "lapse[s] in security" and "inadequate
supervision" that exposed inmates to harm.  (Id. at ¶ 17).  At an

unspecified time, Bond witnessed correctional officers "bringing drugs into the facility," "forcing inmates" to ingest those drugs, and "extort[ing] inmates for financial gain."  (Id. at ¶ 10).

On June 6, 2023, Plaintiff was notified by HCCF that Bond had died while in custody.  (ECF No 1, Ex. 5).  The autopsy report lists the cause of death as an overdose of Fentanyl and Xylazine. (Id.)  After Bond's death, Plaintiff exchanged multiple emails with HCCF staff requesting an investigation into the circumstances surrounding the death and the return of Bond's personal property. (Id., Ex. 4).  Plaintiff alleges that no investigation has been conducted.  (Id.)

B.    **Procedural Background**

On June 5, 2024, Plaintiff filed a *pro se* complaint against Bolivar General Hospital, CoreCivic, and Jerry Wardlow, asserting wrongful death and § 1983 claims.  (ECF No. 1).  Each Defendant filed a motion to dismiss.  (ECF Nos. 12, 16, 22).  Plaintiff subsequently retained counsel and moved for leave to amend her complaint.  (ECF No. 30).  The Court granted leave on December 19, 2024.  (ECF No. 31).  On January 21, 2025, Plaintiff filed an amended complaint, dropping Bolivar General Hospital and naming the Tennessee Department of Correction and Hardeman County Correctional Facilities Corporation as new defendants.  (ECF No.

32).  The Court denied the prior motions to dismiss as moot.  (ECF
No. 34).

In the amended complaint, Plaintiff alleges Defendants
violated Bond's rights under § 1983 by failing to maintain a safe
environment and to protect inmates from the risk of drug overdose.
(ECF No. 32).  Specifically, Plaintiff alleges that, due to
"chronic understaffing," correctional officers failed to conduct
required cell checks every 30 minutes, leaving Bond unattended at
the time of his fatal overdose.  (Id. at ¶¶ 24, 28).  Plaintiff
alleges that "Defendants' negligence" in allowing officers to
bring lethal drugs into the facility and their "failure to uphold
security protocols" directly caused Bond's death and amounted to
a deprivation of his constitutional rights.  (Id. at ¶¶ 18, 29).

On February 4, 2025, Defendants moved to dismiss, arguing
that (1) the amended complaint fails to allege a specific
constitutional violation by any person acting under color of state
law for which Defendants are liable; (2) Plaintiff fails to plead
facts showing that any municipal policy or custom was the "moving
force behind the alleged constitutional deprivation," as required
by Monell v. New York City Dept. of Social Serv., 436 U.S. 658,
691 (1978); and (3) the § 1983 claim against Wardlow is redundant.
(ECF No. 33)

4

On February 19, 2025, Plaintiff filed a response clarifying that the predicate constitutional violation underlying her § 1983 claim is the Eighth Amendment prohibition against cruel and unusual punishment.  (ECF No. 34)  Plaintiff argues that her <u>Monell</u> claim is viable because Defendants' alleged pattern of "understaffing, failure to conduct proper cell checks, and allowing officers to bring drugs into the facility" constitutes a municipal policy or custom.  (Id.)  Plaintiff specifies that her claim against Wardlow is brought in his official capacity as warden of HCCF.  (Id.)  The matter is now fully briefed and ripe for adjudication.

## II.  JURISDICTION

The Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under § 1983.  The Court exercises supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, because those claims arise from a "common nucleus of operative facts" with the § 1983 claims.  <u>Packard v. Farmers Ins. Co. of Columbus Inc.</u>, 423 Fed. Appx. 580, 583 (6th Cir. 2011); <u>see also</u> <u>Royal Canin U.S.A., Inc. v. Wullschleger</u>, 604 U.S. 22, 27 (2025).

5

## III. LEGAL STANDARD

### A.    Rule 12(b)(6) Standard

When evaluating a motion to dismiss under Rule 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff [and] accept all factual allegations as true." Payne v. Secretary of Treasury, 73 Fed. Appx. 836, 837 (6th Cir. 2003); see also League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). However, courts "need not accept as true legal conclusions or unwarranted factual inferences." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007); see also JP Morgan Chase Bank, N.A. v. Winget, 510 F.3d 557, 582 (6th Cir. 2007). Courts may consider "matters of public record, orders, items appearing in the record, and exhibits attached to the complaint," as well as "documents that a defendant attaches to a motion to dismiss … if referred to in the complaint and are central [to the] claim." Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).

To survive a motion to dismiss, the complaint must contain sufficient facts to "state a claim that is plausible on its face." Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). A claim is plausible when the alleged facts "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6

_Iqbal_, 556 U.S. at 678. Although the complaint need not include "detailed factual allegations," _Bell Atlantic Corp v. Twombly_, 550 U.S. 544, 555 (2007), it must assert "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." _Iqbal_, 556 U.S. at 678. A complaint fails to meet this standard when it "pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct.'" _Albrecht_, 617 F.3d at 893.[1]

## B.    Section 1983 Claim

Under 42 U.S.C. § 1983, any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

---

[1] Plaintiff's counsel relies on the wrong legal standard. Plaintiff's response cites the pleading standard in Tennessee Rules of Civil Procedure 8.01 and 12.02(6), rather than the applicable Federal Rules of Civil Procedure. (ECF No. 34). The Tennessee Rules do not apply. Because Plaintiff brings claims under § 1983, the Court exercises federal question jurisdiction under 28 U.S.C. § 1331, and the Federal Rules control. Even if jurisdiction were based on diversity of citizenship under 28 U.S.C. § 1332, the Federal Rules would govern. _See_ _Jones v. Correctional Medical Services, Inc._, 845 F.Supp.2d 824, 852 (W.D. Mich. 2012) (citing _Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co._, 130 S. Ct. 1431, 1449 (2010)) ("[A] state law that conflicts with a valid federal rule simply does not apply in federal court."); _see also_ _Hanna v. Plumer_, 380 U.S. 460, 469-70 (1965) (holding that federal courts sitting in diversity apply the Federal Rules of Civil Procedure instead of conflicting state law).

to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.

To state a claim under § 1983, a plaintiff must allege two elements:

(1) the deprivation of a right secured by the "Constitution and laws of the United States," and

(2) that the deprivation was committed by a person "acting under the color of state law."

Crowder v. Boyce, No. 2:14-cv-2962-JDT-tmp, 2015 WL 4546512, at *3 (W.D. Tenn. Jul. 28, 2015) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). "Like a tort plaintiff, a § 1983 plaintiff must establish "both causation in fact and proximate causation." Marvaso v. Sanchez, 971 F.3d 599, 606 (6th Cir. 2020) (citing Lamont v. New Jersey, 637 F.3d 177, 185 (3d Cir. 2011)). Section 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." Imbler v. Pachtman, 424 U.S. 409, 418 (1976).

## C. **Monell Liability**

When performing "the traditional state function of operating a prison," private entities act under "the color of state law for purposes of § 1983." Thomas v. Coble, 55 Fed. Appx. 748, 748 (6th

Cir. 2003) (citing Street v. Corrs. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996)).  The standard for municipal liability under Monell applies to state agencies like TDOC and to private prison operators like CoreCivic and HCCFC.  See Williams v. CoreCivic of Tenn., LLC, No. 1:24-cv-01074-JDB-jay, 2025 WL 952241, at *5 (W.D. Tenn. Mar. 28, 2025) (citing Street, 102 F.3d at 817-18).

Under Monell, entities acting under color of state law cannot be held vicariously liable under § 1983 for the actions of their employees.  See Braswell v. Corrs. Corp. of Am., 419 Fed. Appx. 622, 627 (6th Cir. 2011) (citing Monell, 436 U.S. at 691-92).  To impose liability under § 1983, a plaintiff "must show that a policy or well-settled custom of the [entity] was the 'moving force' behind the alleged deprivation" of constitutional rights.  Id. (citing Miller v. Sanilac, 606 F.3d 240, 254-55 (6th Cir. 2010)).

As the Supreme Court has explained:

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

9

Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997)
(internal citations omitted). A "custom" may arise from
affirmative conduct or deliberate inaction, and it "need not be
formally approved by the entity" to trigger § 1983 liability.
Schenk ex rel. Ev M v. Thomas, No. 1:22-cv-01268-STA-jay, 2023 WL
5108594, at *3 (W.D. Tenn. Aug. 9, 2023) (quoting City of Canton
v. Harris, 489 U.S. 378, 404 (1989)). However, there must be a
"causal connection" between the policy or custom and the alleged
constitutional violation. Id. (quoting Oklahoma City v. Tuttle,
471 U.S. 808, 823-24 (1985)).

To establish liability under § 1983, a plaintiff must: (1)
"identify the policy [or custom]"; (2) "connect the policy [or
custom] to the [entity] itself"; and (3) "show that the particular
injury was incurred because of the execution of that policy [or
custom]." Id. (quoting Garner v. Memphis Police Dept., 8 F.3d
358, 364 (6th Cir. 1993)) (internal citations omitted).

## IV.  ANALYSIS

### A.   Section 1983 Claims Against CoreCivic, HCCFC, and TDOC

Although § 1983 provides a procedural mechanism to bring
constitutional claims, it does not itself confer any substantive
rights. See Humes v. Gilless, 154 F.Supp.2d 1353, 1357 (W.D. Tenn.
2001). Rather, it creates a "species of tort liability" for the

violation of rights secured by the Constitution.  Manuel v. City
of Joliet, Illinois, 580 U.S. 357, 362 (2017).  The first step in
any § 1983 analysis is to "identify the specific constitutional
right at issue."  Johnson v. CoreCivic, Inc., No. 18-1051-STA-egb,
2018 WL 5798534, at *4 (W.D. Tenn. Nov. 5, 2018) (quoting Albright
v. Oliver, 510 U.S. 266, 271 (1994)).

Here, Plaintiff grounds her § 1983 claim in the Eighth
Amendment, which prohibits the infliction of "cruel and unusual
punishments."  U.S. Const. amend. VIII.  That protection imposes
on prison officials a duty to "provide humane conditions of
confinement," to "ensure that inmates receive adequate food,
clothing, shelter, and medical care, and [to] take reasonable
measures to guarantee the safety of the inmates."  Farmer v.
Brennan, 511 U.S. 825, 833 (1994); see also Bishop v. Hackel, 636
F.3d 757, 766 (6th Cir. 2011).

To establish a failure-to-protect claim under the Eighth
Amendment, a plaintiff must allege:

(1)  an objectively "serious risk to inmate health or
     safety"; and

(2)  a subjectively "culpable state of mind" on part of the
     prison officials – namely, "deliberate indifference to
     the health or safety of the inmate."

Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976).

### 1.   The Objective Prong

"The objective prong of a failure-to-protect claim requires an analysis of the risk to the [inmate] before the alleged injury occurred." Zakora v. Chrisman, 44 F.4th 452, 469 (6th Cir. 2022) (citing Reedy v. West, 988 F.3d 907, 909, 912-14 (6th Cir. 2021)). That analysis considers "the likelihood of harm" in light of the "circumstances that led to the injury." Id. (citing Schack v. City of Taylor, 177 Fed. Appx. 469, 472 (6th Cir. 2006)).

When there are drug-related injuries, a fatal overdose "does not independently establish the objective prong." Williams, 2025 WL 952241, at *5 (quoting Schack, 177 Fed. Appx. at 470). As the Sixth Circuit clarified in Caraway, "[t]he relevant constitutional injury is the exposure to an objectively excessive risk, *not* any physical harm that befalls the inmate because of that risk." Caraway v. CoreCivic of Tenn., LLC, 98 F.4th 679, 685 (6th Cir. 2024). "Serious physical harm — even death — does not *ipso facto* satisfy a failure-to-protect claim's objective component." Id.

Plaintiff alleges that Bond's fatal overdose was a direct consequence of correctional officers smuggling drugs into the facility. (ECF No. 32, ¶ 10). According to Plaintiff's amended

complaint and response, the presence of illicit drugs alone created an "objectively excessive risk to Bond's health and safety." (ECF Nos. 32, 34). Although Plaintiff correctly asserts that drugs like fentanyl pose serious risks, she fails to establish that the risk rose to the level of "objectively excessive." See Zakora, 44 F.4th at 470 ("Fentanyl unquestionably poses a severe danger to anyone who comes in contact with it."); see also United States v. Colon, 246 Fed. Appx. 153, 156 (3d Cir. 2007) ("The inherent danger of drugs is magnified when introduced to a controlled environment like a prison.").

To demonstrate an objectively excessive risk, Plaintiff must show that inmates had "unfettered access to deadly drugs inside a prison," and that the presence of those drugs was "widespread." Caraway, 98 F.4th at 684. A "simple exposure to drugs, without more, does not violate contemporary standards of decency and thus does not satisfy the objective prong" of an Eighth Amendment violation. Williams, 2025 WL 952241, at *5 (quoting Zakora, 44 F.4th at 472).

Although Plaintiff alleges that Bond observed correctional officers bringing drugs into the facility, she fails to plead specific facts about the methods by which officers allegedly smuggled drugs into HCCF, the circumstances under which inmates had access to those drugs, or any prior incidents of inmate

13

overdoses.  Her allegations are insufficient when compared to the level of detail in cases where courts have found an objectively excessive risk of inmate drug overdose.  See Caraway, 98 F.4th at 684 (finding an objectively excessive risk where the complaint included "detailed allegations" that "two other inmates had also overdosed" and that "prison officials failed to investigate those overdoses"); see also Zakora, 44 F.4th at 461 (describing drugs smuggled through basketballs tossed over fences and identifying a prison-wide "drug-smuggling ring.").

Because Plaintiff's amended complaint lacks factual allegations describing with specificity the extent and frequency of drug use at HCCF and the access to drugs, she fails to establish the "objectively excessive risk of harm" necessary to satisfy the first prong of an Eighth Amendment failure-to-protect claim.

### 2.    The Subjective Prong

Addressing the subjective prong of her Eighth Amendment claim, Plaintiff alleges that Defendants acted with "deliberate indifference" to the risk of inmate drug overdose by "negligent[ly], reckless[ly], and intentional[ly]" understaffing the facility.  (ECF No. 32, ¶ 29).  She alleges that, because of understaffing, correctional officers failed to conduct the required 30-minute cell checks, which in turn prevented staff from

14

discovering Bond in time to intervene during his fatal overdose.
(Id. at ¶¶ 17-19).

However, "the failure to adequately staff a prison – even a
deliberate failure – is not itself a constitutional violation."
Caraway, 98 F.4th at 684 (citing Agramonte v. Shartle, 491 Fed.
Appx. 557, 560 (6th Cir. 2012)); see also Burwell v. City of
Lansing, 7 F.4th 456, 471 (6th Cir. 2021) (holding that a failure
to conduct cell checks in compliance with internal policies "does
not constitute deliberate indifference."). "[G]eneralized
allegations that … understaffing 'led to' rampant drug use" are
insufficient to meet the subjective prong. Caraway, 98 F.4th at
686. To satisfy that prong, a § 1983 plaintiff must plead facts
that support a "reasonable inference that the defendants (1) had
notice of the risks that inmates would overdose based on their
unfettered access to drugs and (2) failed to reasonably respond to
that risk." Id. (citing Zakora, 44 F.4th at 472; Farmer, 511 U.S.
at 844).

Plaintiff fails to plausibly allege that Defendants had
general knowledge of a drug problem at HCCF. Although Plaintiff
broadly asserts in her response that Defendants "were aware" of
drug smuggling within the facility (ECF No. 34), she provides no
factual support for that assertion – such as "how [D]efendants
obtained that knowledge, when they obtained it, or what that

15

knowledge entailed." _See_ _Caraway_, 98 F.4th at 686; _see also_ _Zakora_, 44 F.4th at 472 ("The [prison] official must both be aware of facts from which the inference could be drawn and that a substantial risk of serious harm exists, and he must also draw the inference."); _see also_ _Taylor v. Mich. Dept. of Corr._, 69 F.3d 76, 81 (6th Cir. 1995) ("[The prison official] must ha[ve] knowledge about the substantial risk of serious harm to a particular class of persons[.]").

Plaintiff also fails to allege that any correctional officer had specific knowledge of an overdose risk stemming from inmates' unfettered access to drugs, or that any officer failed to respond once the officer became aware of that risk. Although Plaintiff alleges that Bond's "cellmates reportedly called for help" at the time of his overdose, the amended complaint includes no details about how or when Defendants responded, or whether any delay resulted from deliberate indifference. (ECF No. 32, at ¶ 18). Absent more details, Plaintiff's allegations merely restate the elements of the subjective prong of her failure-to-protect claim. Plaintiff has not adequately pled her § 1983 claim of failure-to-protect under the Eighth Amendment.

### B. __Monell__ Claim Against CoreCivic, HCCFC, and TDOC

Because the Court has not found an underlying constitutional violation, it need not address whether § 1983 liability may be

16

imposed on CoreCivic, HCCFC, and TDOC under <u>Monell</u>. <u>See</u> <u>Caraway</u>,
98 F.4th at 683 (citing <u>Baynes v. Cleland</u>, 799 F.3d 600, 622 (6th
Cir. 2015) ("The estate [of the decedent] seeks to impose <u>Monell</u>
liability on the corporate defendants. But because the complaint
doesn't allege an underlying constitutional violation, those
claims fail."); <u>see also</u> <u>Wilson v. Morgan</u>, 477 F.3d 326, 340 (6th
Cir. 2007) ("There can be no <u>Monell</u> municipal liability under §
1983 unless there is an underlying unconstitutional act.").

Even assuming the existence of an underlying constitutional
violation, Plaintiff fails to identify any specific municipal
"policy or custom" with the factual specificity required under
<u>Monell</u>. Plaintiff broadly asserts in her response that Defendants
maintained a "custom" of "understaffing, failure to conduct proper
cell checks, and allowing officers to bring drugs into the
facility" as well as "a persistent pattern of unconstitutional
conduct[.]" (ECF No. 34). Those conclusory assertions,
unsupported by concrete facts, would be insufficient to establish
municipal liability even if alleged in the amended complaint. <u>See</u>
<u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988)
(explaining that a municipal custom must be "so permanent and well
settled as to constitute a custom or usage with the force of
law."); <u>see also</u> <u>Doe v. Claiborne County, Tenn.</u>, 103 F.3d 495,
507-08 (6th Cir. 1996) ("the notion of 'law' must include 'deeply

embedded traditional ways of carrying out state policy.'")
(internal citations omitted); id. at 508 (citing Feliciano v. City
of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993) ("In short, a
'custom' is a 'legal institution' not memorialized by written
law.").

Plaintiff's § 1983 claims against CoreCivic, HCCFC, and TDOC
fail as a matter of law.

### C.    Section 1983 Claim Against Wardlow

Plaintiff brings § 1983 claims against Jerry Wardlow in his
official capacity as the warden of HCCF and an employee of
CoreCivic. (ECF Nos. 32, 34). A suit against an officer in his
official capacity is "only another way of pleading an action
against an entity of which an officer is an agent." Hafer v. Melo,
502 U.S. 21, 25 (1991). Such a suit is not brought "against the
[officer] personally, for the real party in interest is the
entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Unlike
personal-capacity suits, which seek to "impose personal liability
upon a government official for the actions he takes under the color
of state law," an official-capacity suit is, "in all respects other
than name, to be treated as a suit against the entity." Id. at
165 (citing Scheuer v. Rhodes, 416 U.S. 232, 237-238 (1985), and
Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).

Plaintiff asserts that her claims against Wardlow are "based on his specific actions and omissions as warden" and are distinct from those against CoreCivic.  (ECF No. 34).  However, she fails to identify any specific conduct attributable only to Wardlow.  Instead, the allegations against him are identical to those asserted against CoreCivic and the other Defendants.  Thus, the official-capacity claim against Wardlow is redundant.

Because Plaintiff fails to plausibly state a § 1983 claim against CoreCivic based on an underlying Eighth Amendment violation, her official-capacity claim against Wardlow necessarily fails as well.

### D.   Wrongful Death Claims Under State Law

Because dismissal of Plaintiff's § 1983 claims is warranted, the Court must determine whether to exercise supplemental jurisdiction over Plaintiff's remaining wrongful death claims, which arise solely under Tennessee law and do not involve parties of diverse citizenship.  See Cole v. Robertson County Sheriff's Dept., No. 3:18-cv-00497, 2020 WL 738362, at *5 (M.D. Tenn. Jan. 28, 2020) (declining to exercise supplemental jurisdiction over wrongful death claims after dismissing § 1983 claims); see also Lipman v. Budish, 383 F.Supp.3d 764, 778-79 (N.D. Ohio 2019) (same).  Under 28 U.S.C. § 1367, a federal court may decline to exercise supplemental jurisdiction when it "has dismissed all

19

claims over which it has original jurisdiction[.]"  28 U.S.C. §
1367(c)(3).  In exercising that discretion, courts "consider and
weigh several factors, including the 'values of judicial economy,
convenience, fairness, and comity.'"  Gamel v. City of Cincinnati,
625 F.3d 949, 951-52 (6th Cir. 2010) (quoting Carnegie-Mellon Univ.
v. Cohill, 484 U.S. 343, 350 (1988)).  When all federal claims are
dismissed at the Rule 12(b)(6) stage, those factors generally weigh
in favor of dismissing the remaining state-law claims.  See Cole,
2020 WL 738362, at *5 ("When all federal claims have been dismissed
before trial, these factors usually weigh in favor of dismissing
the state-law claims so that they can be pursued in state court.");
see also Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d
1244, 1254-55 (6th Cir. 1996).  The Sixth Circuit has "long
recognized a general rule disfavoring a district court's exercise
of pendent jurisdiction when federal issues are dismissed before
trial." Lipman, 383 F.Supp.3d at 778 (quoting Wellman v. Wheeling
& Lake Erie Ry. Co., 134 F.3d 373 (6th Cir. 1998).

    Potential state law claims arising out of the events Plaintiff
alleges are not elaborated in her amended complaint or response to
the Motion to Dismiss. Having dismissed all federal claims, the
Court has heard no arguments and sees no reason for the remaining
state law claims to be heard here. Comity strongly supports that
conclusion. The Court, therefore, follows the Sixth Circuit's

general rule and declines to exercise supplemental jurisdiction over the remaining state law claims.

## V.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 33) is **GRANTED.**

**IT IS THEREFORE ORDERED** that Plaintiff's § 1983 claims against Defendants CoreCivic, HCCFC, TDOC, and Wardlow are **DISMISSED WITH PREJUDICE.**    The Court declines to exercise supplemental jurisdiction over Plaintiff's wrongful death claims.    Those claims are **DISMISSED WITHOUT PREJUDICE** so that Plaintiff may, if she chooses, pursue them in state court.

**SO ORDERED** this *18th* day of September, 2025.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE